## AFFIDAVIT FOR SEARCH WARRANT

I, Tyler M. Mansfield, a Special Agent with the Drug Enforcement Administration (DEA), state that upon information and belief, the premises, more fully described as:

> 28003 East 50 Highway, Lee's Summit, Missouri, is a light brown/pink single story wood framed residence, with a white garage door facing to the west and front door facing to the south; the residence is located approximately 1/4 mile to the east of Outer Road and East Lone Jack, Lee's Summit Road. The property also contains two red outbuildings, located to the south of the residence.

The residence is presently being used in furtherance of a drug trafficking conspiracy to distribute and possess with intent to distribute methamphetamine, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Furthermore, I assert there is probable cause to believe that search of the target location will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of that and related crimes. I offer the following in support of a search warrant on the target location:

## AGENT BACKGROUND

I, Tyler Mansfield, a Special Agent with the United States Drug Enforcement Administration (DEA), being duly sworn, do hereby depose and state that:

1. I am a Special Agent with the Drug Enforcement Administration (DEA) assigned to the Kansas City District Office. I have been employed with the DEA since September 2017. I graduated the DEA Basic Agent Training Academy on January 26, 2018. I am currently assigned to the Kansas City District Office, Group 41, of the St. Louis Field Division. I was previously employed for approximately 8.5 years as a Police Officer with the City of Jacksonville, Illinois, where I held a position as a Detective. In September 2011, I was assigned to the Illinois State Police

Central Illinois Enforcement group, where my primary responsibility was full-time drug investigation. In October of 2013, I was assigned to the DEA Springfield, Illinois Resident Office as a Task Force Officer; focused primarily on drug investigations.

2. As a Special Agent of the DEA, I am empowered to conduct investigations of, and to make arrests for, the drug offenses enumerated in Title 21, United States Code, Section 841. While with the DEA, I have participated in numerous drug investigations, involving the possession, sale and distribution of illegal drugs and drug paraphernalia to include, possession with intent to distribute, distribution of controlled substances (including cocaine, marijuana, heroin and methamphetamine), as well as investigations directed at monetary transactions involving the proceeds of specified unlawful activities and conspiracies, associated with criminal drug trafficking offenses, in violation of 21 U.S.C. § 841(a)(1)--Transportation and Distribution of Controlled Substances; § 843(b)--Unlawful Use of a Communication Device to Commit and Facilitate the Commission of Drug Trafficking Offenses; § 846--Conspiracy and Attempt to Possess With Intent to Distribute and Distribution of Controlled Substances; § 952 and § 960--Importation of Controlled Substances; and § 963--Conspiracy and Attempt to Import Controlled Substances. My training and experience has involved physical surveillance, execution of search warrants, arrests of numerous drug traffickers, and the handling of cooperating sources and sources of information. On numerous occasions, I have spoken with suspects, defendants, and narcotics investigators concerning the methods and practices of drug traffickers. Through these investigations, I have become familiar with the methods employed by drug traffickers in general, including large Mexico-based drug trafficking organizations, to smuggle, safeguard, and distribute drugs, and to collect and launder drug-related proceeds. These methods include the use of debit calling cards, public telephones, wireless

communications technology such as paging devices and cellular telephones, counter surveillance, elaborately-planned smuggling schemes tied to legitimate businesses, false or fictitious identities and coded communications in an attempt to avoid detection by law enforcement and circumvent drug investigations.

3. I further depose and state that based on my training, experience, and participation in other investigations involving large amounts of methamphetamine and/or other controlled substances, I know that:

    a. Drug traffickers often place assets in names other than their own to avoid detection of these assets by law enforcement agencies;

    b. When drug traffickers place their assets in alias or nominee names, they utilize their own addresses or the addresses of friends and/or relatives in the purchase and titling of those assets;

    c. Even though these assets are in other persons' names, the drug traffickers continue to use these assets and exercise dominion and control over them;

    d. Because the drug traffickers continue to use and maintain control over these assets, they also maintain documents relating to their use and control of these assets. These documents include repair and service records;

    e. Where drug traffickers amass large cash proceeds from the sale of drugs, the traffickers attempt to legitimize these profits. That to accomplish these goals, drug traffickers utilize domestic banks, securities, cashier's checks, money drafts, pre-paid debit cards, stored value cards, real estate, and business fronts;

    f. All individuals, whether their income is from legal, legitimate sources or from illegal sources such as drug trafficking, commonly keep documents pertaining to their obtaining, transferring, investment, and/or expenditure of proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers' checks, bank checks, safe deposit keys, and money wrappers. These items are maintained by the traffickers within their residences, vehicles, businesses, or other locations over which they maintain dominion and control;

g. The Kansas City area is not a "source city" for the production of methamphetamine and traffickers are often required to travel to such "source cities" (such as locations along the southern border or the west coast) in order to negotiate for, acquire and arrange for the transportation of controlled substances back to the Kansas City area. As a result, drug traffickers commonly maintain travel related documents and papers within their possession, in their residences, vehicles, businesses, or other locations which they maintain dominion and control over. These documents include items such as airline, bus or train tickets, receipts and itineraries and hotel receipts;

h. It is common practice for drug traffickers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residence, their vehicles, their business, or other locations which they maintain dominion and control over, for ready access and to conceal these items from law enforcement authorities;

i. Drug traffickers often utilize electronic equipment such as computers (including smart cellular telephones), digital pagers, facsimile machines and telephone answering machines to generate, transfer, count, record, and/or store the information described above;

j. The sale of controlled substances generates large quantities of United States currency in small denominations;

k. Drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization, and utilize cellular telephone devices to store information or send text message relating to their illicit activity;

l. Drug traffickers take or cause to be taken photographs and videos of themselves, their associates, their property, and their product. These drug traffickers usually maintain these photographs within their possession, in their residences, vehicles, businesses, or other locations which they maintain dominion and control over;

m. I have participated in numerous federal and state search warrants upon the residences of large-scale drug traffickers and usually have found such documents, papers and records (as described above) in the residences of drug traffickers;

4

n. Drug traffickers commonly have in their possession (on their person), at their residence, in their vehicles, and/or their businesses, firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Said firearms are used to protect and secure a drug traffickers' property. Such property may include controlled substances, jewelry, drug paraphernalia, books, records, and U.S. currency; and

o. The courts have recognized that unexplained wealth is probative as evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

4. Except where otherwise noted, Special Agents of the DEA or other law enforcement officers have provided the information set forth in this Affidavit to me directly or indirectly. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Such statements are among many statements made by others and are stated in substance, unless otherwise indicated.

## PROBABLE CAUSE

5. On February 26, 2019, the Honorable Gwynne E. Birzer, United States District Court Judge, District of Kansas, signed an affidavit authorizing the GPS tracking on a white Chevrolet Silverado (KS Registration 289LTJ) utilized by Raul Hernandez-Pineda. Hernandez-Pineda was previously identified as a suspected methamphetamine distributor operating in the Kansas City area.

6. On April 10, 2019, the Honorable Gwynne E. Birzer, United States District Court Judge, District of Kansas, signed an affidavit authorizing the GPS tracking extension on a white Chevrolet Silverado (KS Registration 289LTJ) utilized by Raul Hernandez-Pineda.

7. GPS data from the tracker on Hernandez-Pineda's vehicle revealed that Hernandez-Pineda spent significant amounts of time at 28003 East 50 Highway, Lee's Summit, Missouri.

5

Investigators conducted physical surveillance of 28003 East 50 Highway, Lee's Summit, Missouri, which revealed a property located on the dead end of a frontage road, with limited access. Investigators further noted that this location is unique because it is remote, which makes it difficult to conduct law enforcement surveillance. However, while the location is located on a dead end street, it offers quick access to Highway 50. Investigators believed that the limited access location, coupled with the highway access would provide drug traffickers with an advantageous location to operate a methamphetamine conversion laboratory as well as a good vantage point to watch incoming vehicles.

8. On April 1, 2019, at approximately 4:00 p.m., I observed the GPS location of the white Chevrolet Silverado (KS Registration 289LTJ) at 28003 East 50 Highway, Lee's Summit, Missouri. I traveled to 28003 East 50 Highway, Lee's Summit, Missouri, and observed the white Silverado backed up to the garage of the residence. At approximately 5:00 p.m., I observed the white Silverado leave the residence. I noted that the entrance to the property was on a dead end street, with a metal gate blocking the entrance. I noticed as the white Silverado left the residence the occupants of the vehicle secured the gate with a lock. I followed the white Silverado to I-70 and 18th Street, Kansas City, Kansas. Officer Eric Jones with the Kansas City, Kansas Police Department observed a traffic violation and stopped the vehicle at I-70 and South 18th Street. Officer Jones identified the occupants as Gerardo Hernandez-Pineda (driver, later confirmed as Raul Hernandez-Pineda), Maria Antonia Aguirre (front passenger), and Jamie Francisco Hidalgo-Parra (rear passenger). Kansas City, Kansas, K-9 Officer Mark Wilcox arrived on scene to assist Officer Jones. Officer Wilcox deployed his K-9 partner, who conducted a free-air sniff of the white Silverado. Officer Wilcox advised his K-9 partner gave a positive indication for narcotics. Officers searched the while

6

Silverado for contraband with negative results. The traffic stop was concluded and the occupants were released from the scene.

9. On April 26, 2019, at approximately 11:50 a.m., DEA Kansas City investigators initiated physical surveillance at 22000 Cantrell Road, Linwood, Kansas. At approximately 11:54 a.m., surveillance team members observed a silver/grey Nissan Armada (TX Registration LWC1008) pulling a white mobile generator with the company "Power Rent" displayed that was sitting on a trailer, at the gate to the property. A short time later, TFO Shawn Buck observed the silver/grey Nissan and generator trailer pulling on to the property. A check of the vehicle registration indicated the vehicle was registered to Ilda Vela, at 4527 Santa Anita Loop, Laredo, Texas. I was also able to confirm through GPS/PLI information that Hernandez-Pineda's white Chevrolet Silverado (KS Registration 289LTJ) was also located on the property. Investigators in Kansas City have been working a joint investigation with DEA in El Paso and McCallen, Texas. Investigators from the Texas border offices informed DEA Kansas City that drug traffickers are utilizing mobile generators to transport liquid methamphetamine to various locations in the United States. Specifically, DEA agents in McCallen, Texas, received intelligence in reference to generators displaying the name "Power Rent" on the outside being utilized to transport liquid methamphetamine.

10. At approximately 1:00 p.m., SA Chris Kline and I observed the white "Power Rent" generator trailer located near the front entrance to the barn located at 22000 Cantrell Road, Linwood, Kansas. I noted that the generator trailer was unhooked and the silver/grey Nissan which pulled it was not in the area. Agents were later able to confirm the Nissan was located near Emporia, Kansas, traveling south. I also observed Hernandez-Pineda's white Chevrolet Silverado was parked along the western edge of the property, and attached to a black single axel box trailer.

11. At approximately 3:00 p.m., SA Kline and I observed Hernandez-Pineda and another unknown Hispanic male enter the white Chevrolet Silverado. I observed Hernandez-Pineda was wearing a grey T-shirt, blue jeans and a black hat. SA Kline and I observed Hernandez-Pineda unhook the black trailer from the white Chevrolet Silverado. SA Kline and I observed Hernandez-Pineda pull over to the mobile generator trailer, which was delivered by the silver Nissan. Hernandez-Pineda attached the white Silverado to the mobile generator trailer. Hernandez-Pineda and the unknown Hispanic male pulled the mobile generator trailer to the rear of the barn. Hernandez-Pineda backed the mobile generator trailer into the barn, concealing it from view.

12. At approximately 9:07 p.m., Hernandez-Pineda's vehicle left 22000 Cantrell Road, Linwood, Kansas, based upon GPS tracker information. TFO Buck initiated physical surveillance in an attempt to locate the vehicle. TFO Buck found the white Chevrolet Silverado pulling a black single axel box trailer, which resembled the black box trailer from 22000 Cantrell Road, Linwood, Kansas, in the area of Highway 470 and Blue Ridge Boulevard in Missouri. TFO Buck and I tracked the white Chevrolet Silverado as it proceeded south on I-435 from I-70. TFO Buck and I anticipated the vehicle was en route to 28003 East 50 Highway, Lee;s Summit, Missouri, which had been previously identified as a frequented address utilized by Hernandez-Pineda. Based on this information, investigators believed that Hernandez-Pineda had off-loaded liquid methamphetamine at 22000 Cantrell Road, Linwood, Kansas, into the black box trailer and was using the cover of darkness to conceal the transportation of the methamphetamine.

13. At approximately 9:56 p.m., Missouri Highway Patrol Trooper Aaron Engelhart initiated a traffic stop on the white Chevrolet Silverado at 963 Oldham Parkway, Lee's Summit, Missouri. Trooper Engelhart made contact with the driver of the vehicle, who identified himself as

Gerardo Hernandez-Pineda. Trooper Engelhart advised he believed Hernandez-Pineda was using a false name. Trooper Engelhart advised he conducted a fingerprint scan of "Gerardo Hernandez-Pineda," and the results of the fingerprint scan indicated "Gerardo Hernandez-Pineda" was an alias used by Raul Hernandez-Pineda. Trooper Engelhart advised Raul Hernandez-Pineda had an ICE detainment order. Hernandez-Pineda was secured by Trooper Engelhart. Trooper Engelhart advised he would conduct an inventory search of the white Chevrolet Silverado and the black trailer. I arrived on scene to assist with the inventory search. I observed Hernandez-Pineda sitting in Trooper Engelhart's squad car. I observed Hernandez-Pineda was wearing the same clothing I had observed him wearing earlier in the day at 22000 Cantrell Road, Linwood, Kansas, which was a grey T-shirt and jeans. Trooper Engelhart advised that prior to arresting Hernandez-Pineda, he had told troopers that they could search everything except the trailer, which was pad locked. Trooper Engelhart and I began an inventory search of the vehicle and trailer. Upon opening the trailer, I observed 28 white five (5) gallon buckets, which were sealed. I also observed a steel burner rack along with three (3) electric pumps and rubber hoses. I opened one of the five gallon buckets and observed a liquid substance which, through my training and experience, I suspected was liquid methamphetamine. Also, through my training and experience, I knew the steel burner rack, rubber hosing and electric pumps to be utilized by drug traffickers in methamphetamine conversion laboratories. I overheard Trooper Engelhart ask Hernandez-Pineda what the contents were in the trailer. Hernandez-Pineda said he had no idea and acted surprised by the discovery. The vehicle, trailer and its contents were secured by Trooper Engelhart and me. The vehicle and trailer was taken to Missouri Highway Patrol Troop A Headquarters. Hernandez-Pineda was transported to the Jackson County, Missouri Detention Center where he was held, pending ICE detention.

14. SA Kline and TFO Carlos Navarro arrived at the Missouri Highway Patrol Troop A headquarters. SA Kline, TFO Navarro and I took possession of the vehicle, trailer, and its contents which included the 28 buckets of suspected liquid methamphetamine. SA Kline, TFO Navarro and I transported the vehicle, trailer, 28 buckets of suspected liquid methamphetamine, and other contents to the DEA Kansas City District Office for processing. A field test was later conducted on the liquid methamphetamine, which yielded positive results for methamphetamine.

15. I examined the paperwork found inside the white Silverado, which was recovered from the inventory search of the vehicle. I observed KCP&L billing invoice paperwork for address 28003 East Highway 50, Lee's Summit, Missouri. The billing information was in the name of "Valentin Amaya-Hernandez." The most recent KCP&L bill appeared to be paid on April 12, 2019. I also found a Public Water Supply bill in the name, Manuel Hernandez, which had a service date of March 4, 2019 to March 25, 2019, at 28003 East Highway 50, Lee's Summit, Missouri.

16. Agents weighed and measured the liquid methamphetamine, which weighed approximately 140 gallons. Based on a 1:1 yield ratio, the solution was estimated to have a production capability of approximately 1,120 pounds of finished methamphetamine.

17. On April 29, 2019, SA Derek Maguire, TFO Navarro, and I traveled to the Immigration and Customs Enforcement (ICE) office located at 11125 North Ambassador Drive, Kansas City, Missouri, to conduct an interview of Hernandez-Pineda. Hernandez-Pineda was placed in an interview room and read his Constitutional rights per the *Miranda* decision. Hernandez-Pineda acknowledged that he understood his rights and wished to speak to agents. Hernandez-Pineda told investigators that he was approached by two unknown Hispanic males who offered to pay him to $200 to pick up a trailer in Lawrence, Kansas, and deliver it to Lone Jack, Missouri. Agents

explained to Hernandez-Pineda that a title for the trailer that he was pulling (containing the liquid methamphetamine) on April 26, 2019, was located inside his vehicle. Hernandez-Pineda said that his wallet was stolen and someone must have purchased the trailer in his name. Hernandez-Pineda told investigators that he did not wish to say anymore because he feared for the safety of his family in Mexico.

18. On April 30, 2019, the Honorable Gwynne E. Birzer, United States Magistrate Judge, District of Kansas, signed an order for a search warrant authorizing agents to search the property at 22000 Cantrell Road Linwood, Kansas, where Hernandez-Pineda was seen by agents discarding his black trailer and moving the power generator into the outbuilding. Agents searched the property and located the same power generator pulled inside outbuilding where it was left by Hernandez-Pineda. Agents noted that the words "Power Rent" were displayed on the side of the generator. Investigators conducted a field test of the liquid remnants inside the fuel tank which yielded a positive indication for the presence of methamphetamine. Investigators believe that on April 26, 2019, Hernandez-Pineda used the pump located in the black trailer to extract liquid methamphetamine from the fuel tank of the power generator into the 28 plastic bucks, which were located during the traffic stop. In addition to the generator, agents seized nine (9) firearms and ammunition.

19. Based on the information to date, agents believe Hernandez-Pineda was en route to 28003 East 50 Highway, Lee's Summit, Missouri, with the 140 gallons of liquid methamphetamine. Agents believe, based on the amount of liquid methamphetamine, that Hernandez-Pineda is using 28003 East 50 Highway, Lee's Summit, Missouri, as a methamphetamine conversion laboratory.

20. Based on the foregoing facts, your Affiant has probable cause to believe that the address of 28003 East 50 Highway, Lees Summit, Missouri, in fact does contain the following:

> Liquid methamphetamine, liquid methamphetamine conversion materials; digital or other types of scales used to weigh quantities of drugs, drug packaging and paraphernalia; purchase and/or rental agreements, indicia of occupancy, residency, or ownership of the premises listed above; address or telephone books and papers reflecting names, addresses and telephone numbers of associates; electric tape and packaging/sealing material or sealing equipment; photographs, in particular photographs of co-conspirators, assets; and records, receipts, notes, correspondence, ledgers, and other document or papers relating to the transportation, ordering, purchase, and distribution of controlled substances.

Such items constitute evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846. There further exists probable cause to believe that items described are being concealed on the premises.

_____
Tyler M. Mansfield
Special Agent
Drug Enforcement Administration
Kansas City District Office

Subscribed and sworn before me
this 6th day of May, 2019.

_____
HONORABLE JOHN T. MAUGHMER
United States Magistrate Judge
Western District of Missouri

12